1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

KEVIN LEE KENNEDY,

                        Plaintiff,

    v.

DAN WATTS, *et al.,*

                    Defendants.

3:17-cv-00468-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]

       This case involves a civil rights action filed by Plaintiff Kevin Lee Kennedy ("Kennedy") against Defendants James Dzurenda and Williams Gittere (collectively referred to as "Defendants").[2] Currently pending before the court is Defendants' motion for summary judgment. (ECF Nos. 92, 94 (sealed)).  Kennedy opposed the motion (ECF No. 102) and no reply was filed.  For the reasons stated below, the court recommends that Defendants' motion for summary judgment (ECF No. 92) be granted.

**I.    BACKGROUND AND PROCEDURAL HISTORY**[3]

       Kennedy is an inmate in the custody of the Nevada Department of Corrections ("NDOC").  At the time relevant to this action, Kennedy was incarcerated as a pretrial detainee "safe keeper" at Ely State Prison ("ESP").  (ECF No. 21).  Proceeding *pro se*, Kennedy filed the instant civil rights action pursuant to 42 U.S.C. § 1983, alleging

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    Kennedy also named Tim Filson as a defendant in this lawsuit. (*See* ECF No. 21). The claim against Defendant Filson was dismissed as service was not effectuated. (*See* ECF No. 99).

[3]    Kennedy's complaint is comprised of events related to two separate entities, White Pine County and the Nevada Department of Corrections.  This Report and Recommendation discusses only the allegations surrounding the NDOC Defendants and the NDOC Defendants' motion for summary judgment (ECF No. 92).

1    multiple counts and seeking monetary, declaratory, and injunctive relief.  (*Id.*)

2         According to Kennedy's First Amended Complaint ("FAC") (ECF No. 21), the

3    alleged events giving rise to his claims are as follows: On February 20, 2018, Dzurenda

4    and Gittere transferred Kennedy from the White Pine County Jail to ESP as a "safe

5    keeper" unlawfully because they did not grant him a hearing or notice.  (*Id.* at 123, 127,

6    129.)  Kennedy arrived at ESP and was placed into administrative segregation in Unit 1-

7    B, which is a unit for death row prisoners.  (*Id.* at 123.)  When Kennedy asked why he

8    was placed into administrative segregation, he was told he was placed there for his own

9    safety.  (*Id.*)

10         Pursuant to 28 U.S.C. § 1915(A)(a), the District Court entered a screening order

11   allowing Kennedy to proceed with his Count VI claim against Defendants.  (ECF No. 24.)

12   The District Court found that Kennedy stated a colorable denial of due process claim

13   related to his placement and retention in administrative segregation by Dzurenda and

14   Gittere.  (*Id.*)

15         On August 16, 2019, Defendants filed their motion for summary judgment

16   asserting they are entitled to summary judgment because (1) Dzurenda did not

17   personally participate in the alleged deprivations, (2) Defendants did not violate

18   Kennedy's rights by allegedly housing him in administrative segregation without a

19   hearing, and, (3) Defendants are entitled to qualified immunity.[4]  (ECF No. 92.)  Kennedy

20   opposed the motion (ECF No. 102).

21   **II.    LEGAL STANDARD**

22         Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle*

23   *Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly

24   grants summary judgment when the record demonstrates that "there is no genuine

25   issue as to any material fact and the movant is entitled to judgment as a matter of law."

26   *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify

27   _____

28   [4]    Defendants also state Kennedy failed to exhaust his administrative remedies, but
     they do not present any argument as to this assertion.  (*See* ECF No. 92 at 2.)

2

which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must

1  come forth with evidence from which a jury could reasonably render a verdict in the
2  non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the
3  summary judgment motion only by setting forth specific facts that illustrate a genuine
4  dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477
5  U.S. at 324. Although the nonmoving party need not produce authenticated evidence,
6  Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as
7  to the material facts" will not defeat a properly-supported and meritorious summary
8  judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
9  586–87 (1986).

10      For purposes of opposing summary judgment, the contentions offered by a *pro se*
11  litigant in motions and pleadings are admissible to the extent that the contents are based
12  on personal knowledge and set forth facts that would be admissible into evidence and
13  the litigant attested under penalty of perjury that they were true and correct. *Jones v.*
14  *Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

15  **III.    DISCUSSION**

16      **A.  Civil Rights Claims under 42 U.S.C. § 1983**

17      42 U.S.C. § 1983 aims "to deter state actors from using the badge of their
18  authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*,
19  451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th
20  Cir. 2000)). The statute "provides a federal cause of action against any person who,
21  acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*,
22  526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing
23  substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947
24  F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege
25  (1) the violation of a federally-protected right by (2) a person or official acting under the
26  color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the
27  plaintiff must establish each of the elements required to prove an infringement of the
28  underlying constitutional or statutory right.

4

**B.  Fourteenth Amendment Procedural Due Process**

In his FAC, Kennedy alleges that he was transferred from the White Pine County Jail to ESP as a "safe keeper" and placed into administrative segregation, but was not given a hearing, notice of charges/reason for segregation, or an opportunity to present his views.  (ECF No. 21 at 123.)

Defendants argue Kennedy was placed in administrative segregation as a safe keeper inmate in order to protect his safety and security.  (ECF No. 92 at 10.) Defendants further argue that Kennedy's assertions that he did not receive as many privileges as he would have enjoyed if he were housed in general population are insufficient to establish a liberty interest implicating the Fourteenth Amendment right to due process.  (*Id.*)

Fourteenth Amendment claims for denial of procedural due process entail two components.  First, the court must determine that the plaintiff possessed a constitutionally protected interest, such that due process protections apply. Second, and if so, the court must examine the level of due process demanded under the circumstances. A claim lies only where the plaintiff has a protected interest, and the defendant's procedure was constitutionally inadequate.

The Fourteenth Amendment of the United States Constitution guarantees all citizens, including inmates, due process of law.  However, the Constitution protects only certain interests with the guarantees of due process; an inmate's right to procedural due process arises only when a constitutionally protected liberty or property interest is at stake.  *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005).  Such interests may arise from the Constitution itself or from state law.

Under the Due Process Clause, an inmate does not have liberty interests related to prison officials' actions that fall within "the normal limits or range of custody which the conviction has authorized the State to impose."  *Sandin v. Conner,* 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976)).  The Clause contains no embedded right of an inmate to remain in a prison's general population.  *Id.* at 485–86.

Further, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms,* 459 U.S. 460, 468 (1983), *overruled on other grounds by Sandin,* 515 U.S. at 472–73. "Thus, the hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, does not violate the due process clause because there is no liberty interest in remaining in the general population." *Cnty. of Kern,* 45 F.3d at 1315. At bottom, "[o]nly the most extreme change in conditions of confinement have been found to directly invoke the protections of the Due Process Clause...." *Chappell v. Mandeville,* 706 F.3d 1052, 1063 (9th Cir. 2013).

State law also may create liberty interests. Where segregated housing or other prison sanctions "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]" due process protections arise. *Sandin,* 515 U.S. at 483–84. What matters is not the particular label or characterization of the segregation or sanction, but instead, its underlying nature: "[n]o matter how a prisoner's segregation (or other deprivation) is labeled by the prison or characterized by the prisoner, a court must examine the substance of the alleged deprivation and determine whether it constitutes an atypical and significant hardship...." *Hernandez v. Cox,* 989 F.Supp.2d 1062, 1068–69 (D.Nev.2013).

When conducting the atypical-hardship inquiry, courts examine a "combination of conditions or factors...." *Keenan v. Hall,* 83 F.3d 1083, 1089 (9th Cir.1996). These include: (1) the extent of difference between segregation and general population; (2) the duration of confinement; and (3) whether the sanction extends the length of the prisoner's sentence. *See Serrano,* 345 F.3d at 1078 (citing and discussing *Sandin,* 515 U.S. at 486–87). That a particular punishment or housing placement is more restrictive than administrative segregation or general population privileges is, alone, not enough: even where "the conditions in segregation are worse than those a prisoner will typically encounter in prison, the Court must still consider whether the conditions are extreme

enough in nature and duration or whether they will necessarily affect the length of a prisoner's sentence." *Hernandez,* 989 F.Supp.2d at 1069. "Typically," as the Ninth Circuit has stated, "administrative segregation in and of itself does not implicate a protected liberty interest" under the *Sandin* factors. *Serrano,* 345 F.3d at 1078.

The Due Process Clause does not afford prisoners a liberty interest in being free from intrastate prison transfers, *Meachum*, 427 U.S. at 225, or in remaining in the general prison population. *Hewitt*, 459 U.S. at 468; *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) ("administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence"). In *Sandin*, the Court found that a prisoner may have a liberty interest in avoiding transfer to particular conditions of confinement if the transfer "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Because administrative detention falls within the terms of ordinary confinement, Kennedy does not have a liberty interest in being free from administrative segregation. Further, Kennedy, who shoulders the burden of proof on this point, has not designated facts from which a reasonable jury could find he has a liberty interest; thus, Defendants are entitled to summary judgment as to this claim.

Nonetheless, even if the court were to find that Kennedy possessed a liberty interest in his placement in administrative segregation, the court also finds that Kennedy was afforded due process. For placement in administrative segregation, an inmate must "receive some notice of the charges against him," *Hewitt*, 459 U.S. at 476, or "notice of the factual basis leading to consideration" for confinement, *Wilkinson*, 545 U.S. at 225-26. The notice must be delivered "within a reasonable time following an inmate's transfer" in order to be effective in helping the inmate prepare a defense at his hearing. *See Hewitt*, 459 U.S. at 476 n.8; *see also Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986) abrogated in part on other grounds by *Sandin*, 515 U.S. at 472 ("Prison officials must hold an informal nonadversary proceeding within a reasonable time after the prisoner is segregated.")

According to Kennedy's Offender Information Summary, as well as the sworn declaration of Caseworker Tasheena Sandoval, on February 20, 2018, following a guilty verdict, Kennedy was transferred from the White Pine County Jail to ESP as a "safekeeper." (*See* ECF Nos. 92-2 at 2; 92-3 at 2.)  On February 20, 2018, Kennedy received a "reception review," where he was classified as a "safekeeper" upon his transfer from the White Pine County Jail.  (ECF No. 92-2 at 2.)  Kennedy received an initial administrative segregation hearing on February 23, 2018, where he was informed he would be housed in administrative segregation and Kennedy did not express any "issues or concerns."  (*Id.*)  Kennedy received an additional "reception review" on March 5, 2018, after being returned to ESP from court.  (*Id.* at 3.)  According to the Offender Information Summary and the sworn declaration of Tasheena Sandoval, Kennedy received monthly administrative segregation reviews on March 22, 2018, April 26, 2018, May 29, 2018, June 28, 2018, and July 24, 2018, but declined to appear.  (ECF Nos. 92-2 at 3; 92-3 at 3.) Each administrative segregation review determined Kennedy should be in administrative segregation because he was a "safekeeper due to safety/security concerns."  (*Id.*)  Kennedy acknowledged in his deposition that he was informed he was being housed in administrative segregation due to his safekeeper status and for safety and security concerns.  (*See* ECF No. 92-1 at 8.)

The court concludes, based on the evidence in the record, that Kennedy received the process he was due. Within three (3) days of being moved, Kennedy knew that he was placed in administrative segregation for the "safety [and] security of the institution" due to his safekeeper status. Thus, Kennedy had "notice of the factual basis leading to consideration" for confinement and regular informal evidentiary reviews. *See Wilkinson*, 545 U.S. at 225-26 (2005).  Accordingly, the court recommends Defendants' motion for summary judgment (ECF No. 92) be granted. [5]

_____

[5]     Because the Court finds that Kennedy's due process rights were not violated, it need not address Defendants' other arguments related to personal participation or qualified immunity.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.    CONCLUSION**

Based upon the foregoing, the court recommends Defendants' motion for summary judgment (ECF No. 92) be granted.  The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**V.    RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 92) be **GRANTED**.

**DATED**:  January 2, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**