1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

KEVIN LEE KENNEDY,

Plaintiff,

v.

DAN WATTS, *et al.,*

Defendants.

3:17-cv-00468-MMD-CLB

## REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]

This case involves a civil rights action filed by Plaintiff Kevin Lee Kennedy ("Kennedy") against Defendants Shannon Casarez, Terrance Deeds, Scott Henriod, Nick Lopez, Nathan Mingo, Brandi Sumrall, Caleb Sumrall, and Dan Watts (collectively referred to as "Defendants").[2] Currently pending before the court is Defendants' motion for summary judgment. (ECF No. 84). Kennedy opposed the motion (ECF No. 105) and Defendants replied (ECF No. 106). For the reasons stated below, the court recommends that Defendants' motion for summary judgment (ECF No. 84) be granted.

## I. BACKGROUND AND PROCEDURAL HISTORY[3]

Kennedy is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). At the time relevant to this action, Kennedy was incarcerated as a pretrial detainee at the White Pine County Jail ("WPCJ"). (ECF No. 21). Proceeding *pro se*,

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    Kennedy also named "Shady" as a defendant in this lawsuit. (*See* ECF No. 21). The claim against Defendant Shady was dismissed as service was not effectuated. (*See* ECF No. 99).

[3]    Kennedy's complaint is comprised of events related to two separate entities, White Pine County and the Nevada Department of Corrections. This Report and Recommendation discusses only the allegations surrounding the White Pine County Defendants and the White Pine County Defendants' motion for summary judgment (ECF No. 84).

1  Kennedy filed the instant civil rights action pursuant to 42 U.S.C. § 1983, alleging

2  multiple counts and seeking monetary, declaratory, and injunctive relief. (*Id.*)

3          **A.**     **Background Facts from Complaint**

4        According to Kennedy's First Amended Complaint ("FAC") (ECF No. 21), the

5  alleged background events giving rise to his claims are as follows: Kennedy was

6  involved in a fight at the Jailhouse Casino in Ely, Nevada. (*Id.* at 8, 18.) Officer Sumrall

7  arrived at the casino to investigate a fight that allegedly had been perpetrated by

8  Kennedy. (*Id.* at 18.) An anonymous third-party told Nicole Collard, an employee of the

9  Jailhouse Casino, that the "Kennedy brothers" were involved. (*Id.* at 5.) Sergeant Shady

10  saw Kennedy outside the casino and advised him to pull over. (*Id.* at 18.) Kennedy

11  ignored him. (*Id.*) Kennedy exited the Jailhouse Casino's parking lot and stopped at the

12  intersection of Lyons Avenue and 7th Street. (*Id.* at 9.)

13        Officer Sumrall identified Kennedy's vehicle based on description Sergeant Shady

14  provided. (*Id.* at 18.) In order to affect an enforcement stop, Officer Sumrall pulled in

15  front of Kennedy's vehicle. (*Id.* at 9.) Officer Sifre pulled in behind Kennedy's vehicle,

16  boxing the vehicle in. (*Id.* at 8, 24.) Officer Sumrall shouted numerous commands while

17  pointing his gun at Kennedy's face; Kennedy, fearing that Officer Sumrall may open fire,

18  sat still and placed his hands on the steering wheel. (*Id.* at 9.) While Kennedy remained

19  seated in his vehicle, Officer Sumrall grabbed Kennedy by the arm and pulled him out of

20  the vehicle, and then Officer Sumrall slammed Kennedy's chest and face onto the

21  ground. (*Id.*)

22        Kennedy was arrested and placed in the back of Officer Sumrall's vehicle. (*Id.* at

23  14.) Kennedy escaped the vehicle on foot with his hands cuffed. (*Id.* at 28.) Sergeant

24  Shady, Officer Sifre, and Officer Sumrall chased after Kennedy, yelling for him to stop

25  and get on the ground. (*Id.*) Kennedy was re-apprehended and Sergeant Shady

26  transported him to the Public Safety Building and placed him in a holding cell. (*Id.*)

27  //

28  //

**A. Excessive Force Claim**

In his Count III claim, Kennedy alleges the following: Sergeant Shady transported Plaintiff to WPCJ. (*Id.* at 55.) Officer Sumrall and Officer Deeds escorted him to a room where he was joined by Nurse Sumrall. (*Id.* at 57.) While in the room, Kennedy claims to have been "strapped down in a restraint chair with an officer on each arm and leg." (*Id.*) Officer Sumrall's and Officer Deed's use of force in connection with the blood draw was unnecessary, as Kennedy was cooperative and not refusing. (*Id.*) Kennedy repeatedly asked to take a breath test instead, however, he was ignored. (*Id.*) As a result, Kennedy, who has a phobia of needles and PTSD, suffered pain and undue stress. (*Id.* at 58.) Kennedy asserts that Officer Sumrall, Officer Deeds, and Nurse Sumrall obtained the results of the blood test in violation of his rights under the Fourth Amendment. (*Id.*)

Pursuant to 28 U.S.C. § 1915(A)(a), the District Court entered a screening order allowing Kennedy to proceed with his Count III claim against Defendants Officer Sumrall, Officer Deeds, and Nurse Sumrall.  (ECF No. 24.)  The District Court found that Kennedy stated a colorable excessive force claim under the Fourth Amendment right to be free from unreasonable searches and seizures related to his claim of a non-consensual blood draw.  (*Id.* at 8-9.)

**B. Failure to Protect Claim**

In his Count IV claim, Kennedy alleges that Watts, Henriod, Sawyer, Mingo, Lopez, Wall, and Casarez knew that Inmate Hollis was violent and mentally ill but housed Hollis with Kennedy because WPCJ is not designed to hold mentally ill inmates separately. (ECF No. 21 at 72, 75, 78.) Kennedy submitted numerous kites at different times about the situation. (*Id.* at 74, 77.) Mingo and Lopez told Kennedy that they were aware of the situation, yet neither of them acted because "there is nothing that can be done." (*Id.* at 75, 77.) Over time, Kennedy became more and more fearful for his safety. (*Id.* at 74.) Because of his constant fear, he was unable to sleep, and his mental health deteriorated. (*Id.*) On June 10, 2017, Hollis attacked Kennedy by beating him, causing serious injuries. (*Id.* at 76.) Kennedy sustained injuries including a cut across his nose,

1    scraped knees and feet, a black eye, and a broken tooth that later fell out. (*Id.* at 76, 79.)

2    The next day, he complained vocally and in writing, but no action was taken to move him

3    to a more secure location. (*Id.* at 77.)

4          Pursuant to 28 U.S.C. § 1915(A)(a), the District Court entered a screening order

5    allowing Kennedy to proceed with his Count IV claim against Defendants Watts, Henriod,

6    Sawyer, Mingo, Lopez, Wall, and Casarez. (ECF No. 24.) The District Court found that

7    Kennedy stated a colorable Fourteenth Amendment due process claim related to his

8    failure to protect allegations. (*Id.* at 10-11.)

9          **C. Defendants' Motion for Summary Judgment**

10          On July 3, 2019, Defendants filed their motion for summary judgment asserting

11    they are entitled to summary judgment because (1) the level of restraint used during the

12    blood draw was appropriate, (2) Kennedy presents no evidence that Defendants were

13    aware of the risk another inmate posed to Kennedy's safety, yet ignored the problem

14    resulting in Kennedy being assaulted, (3) Defendants are entitled to qualified immunity,

15    and (4) Kennedy has no evidence sufficient to continue with his official capacity claims

16    under *Monell.* (ECF No. 84.) Kennedy opposed the motion (ECF No. 105) and

17    Defendants replied (ECF No. 106).

18    **II.    LEGAL STANDARD**

19          Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle*

20    *Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly

21    grants summary judgment when the record demonstrates that "there is no genuine

22    issue as to any material fact and the movant is entitled to judgment as a matter of law."

23    *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify

24    which facts are material. Only disputes over facts that might affect the outcome of the

25    suit under the governing law will properly preclude the entry of summary judgment.

26    Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v.*

27    *Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a

28    reasonable jury could find for the nonmoving party. *Id.* Conclusory statements,

1  speculative opinions, pleading allegations, or other assertions uncorroborated by facts

2  are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509

3  F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th

4  Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ

5  when interpreting the record; the court does not weigh the evidence or determine its

6  truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw.*

7  *Motorcycle Ass'n*, 18 F.3d at 1472.

8      Summary judgment proceeds in burden-shifting steps. A moving party who does

9  not bear the burden of proof at trial "must either produce evidence negating an essential

10  element of the nonmoving party's claim or defense or show that the nonmoving party

11  does not have enough evidence of an essential element" to support its case. *Nissan*

12  *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the

13  moving party must demonstrate, on the basis of authenticated evidence, that the record

14  forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as

15  to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285

16  F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising

17  therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763

18  F.3d 1060, 1065 (9th Cir. 2014).

19      Where the moving party meets its burden, the burden shifts to the nonmoving

20  party to "designate specific facts demonstrating the existence of genuine issues for

21  trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

22  "This burden is not a light one," and requires the nonmoving party to "show more than

23  the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must

24  come forth with evidence from which a jury could reasonably render a verdict in the

25  non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the

26  summary judgment motion only by setting forth specific facts that illustrate a genuine

27  dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477

28  U.S. at 324. Although the nonmoving party need not produce authenticated evidence,

1    Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as

2    to the material facts" will not defeat a properly-supported and meritorious summary

3    judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

4    586–87 (1986).

5         For purposes of opposing summary judgment, the contentions offered by a *pro se*

6    litigant in motions and pleadings are admissible to the extent that the contents are based

7    on personal knowledge and set forth facts that would be admissible into evidence and

8    the litigant attested under penalty of perjury that they were true and correct. *Jones v.*

9    *Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

10   **III.    DISCUSSION**

11        **A.  Civil Rights Claims under 42 U.S.C. § 1983**

12        42 U.S.C. § 1983 aims "to deter state actors from using the badge of their

13   authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*,

14   451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th

15   Cir. 2000)). The statute "provides a federal cause of action against any person who,

16   acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*,

17   526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing

18   substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947

19   F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege

20   (1) the violation of a federally-protected right by (2) a person or official acting under the

21   color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the

22   plaintiff must establish each of the elements required to prove an infringement of the

23   underlying constitutional or statutory right.

24        **B.  Fourth Amendment – Excessive Force**

25        Kennedy's first claim for relief is based on allegations of excessive force used

26   during a blood draw performed by Nurse Sumrall at the direction of law enforcement on

27   the night of Kennedy's arrest.  (ECF No. 21.)  The Court allowed Kennedy to proceed on

28   his claim on the basis that the "alleged excessive force used in furtherance of, or in

1    connection with, the blood draw, was unnecessary because [Kennedy] was cooperative

2    and did not refuse the draw." (ECF No. 24 at 9.)

3         Defendants argue that Kennedy's own testimony provides justification for the use

4    of restraint, given Kennedy's resistance to the lawful blood draw. (ECF No. 84 at 15-16.)

5    In support of their motion for summary judgment, Defendants provide portions of

6    Kennedy's deposition testimony, an affidavit in support of search warrant, the search

7    warrant authorizing the blood draw, video showing Kennedy refusing to submit to testing,

8    video of the blood draw, and photos of Kennedy taken the day after his arrest and the

9    blood draw. (*See* ECF Nos. 84-1, 84-6, 84-7, 84-8, 112, 114.)[4]

10        The Fourth Amendment prohibits unreasonable searches and seizures.  A forced

11   blood draw can violate the Fourth Amendment if it is unreasonable under the

12   circumstances, *see Schmerber v. California*, 384 U.S. 757, 771–72 (1966), such as

13   where it is "conducted in an unnecessarily cruel, painful, or dangerous manner."

14   *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1447 n.7 (9th Cir. 1989) *overruled on*

15   *other grounds by Bull v. City & County of San Francisco*, 595 F.3d 964, 981 (9th Cir.

16   2010) (en banc). The blood draw must "be taken by trained medical personnel in

17   accordance with accepted practices."  *United States v. Chapel,* 55 F.3d 1416, 1418 (9th

18   Cir. 1995) (en banc) (quoting the original panel opinion).

19        Under the circumstances of this case, the court finds that the blood draw was not

20   unreasonable under the Fourth Amendment.  First, the Defendants lawfully obtained a

21   warrant to draw Kennedy's blood based upon his refusal to submit to other forms of

22   evidentiary testing.  (*See* ECF Nos. 84-6, 84-7, 84-8.)  Video footage clearly shows

23   Kennedy refusing to submit to testing, necessitating the need to obtain a warrant.  (*See*

24

25

26

27   [4]    The court notes that the video has not been authenticated.  However, because
     Kennedy relies on the same evidence in support of his opposition and does not object to
28   its authenticity, the court will accept the evidence as authentic for purposes of ruling on
     the motion for summary judgment.

1  ECF No. 84-8.)[5]   Video footage also shows that before the blood draw occurred,

2  Kennedy was notified that a warrant had been obtained and he was shown a copy of the

3  warrant.  (*See id.*)   Next, the facts are uncontested as to how the blood draw was

4  performed.  Kennedy was removed from his cell by officers who placed him in a restraint

5  chair.  Kennedy was then moved to the intake desk where Defendant Nurse Sumrall

6  performed the blood draw.  Video footage of the blood draw shows Kennedy being

7  argumentative and making threats to the officers.  (*See id.*)   During the blood draw,

8  Kennedy grabbed Nurse Sumrall's thumb, requiring the officers to hold Kennedy down to

9  complete the draw.  (*See id.*)   Importantly, Kennedy was convicted for battery upon

10  Nurse Sumrall.  (ECF No. 84-5.)  Kennedy also testified during his deposition that he

11  was physically resisting during the blood draw.  (*See* ECF No. 84-1 at 40-41.)  Based on

12  the evidence, Kennedy was refusing to submit to a lawful blood draw and the

13  Defendants used the appropriate force necessary to obtain a sample.[6]   Kennedy has

14  provided no evidence to contradict this evidence.  Rather, his own deposition statements

15  are in line with the video footage.  Therefore, Kennedy has failed to come forward with

16  the necessary evidence to create an issue of fact.  Because the court finds that there are

17  no issues of material fact, the court recommends that summary judgment be granted in

18  favor of Defendants.

19  ### C. Fourteenth Amendment – Failure to Protect

20  Kennedy's second claim for relief is based upon allegations that Defendants

21  Watts, Henriod, Sawyer, Mingo, Lopez, Wall, and Casarez failed to protect Kennedy

22  from assault by an inmate who they knew was violent and mentally ill. (ECF No. 21 at

23  72, 75, 78.)

24

25  [5]   While the court cites to the ECF number that corresponds with the video as
26  submitted with the motion for summary judgment, the court relied on the manual filing of
     the DVD, which was submitted at ECF No. 112.

27  [6]   To the extent Kennedy attempts to argue that the search warrant was invalid or
28  results of the blood draw are invalid, those claims are barred by *Heck v. Humphrey*, 512
     U.S. 477 (1994).

1    A pretrial detainee's constitutional rights relative to failure to protect claims are

2    addressed under the Due Process Clause of the Fourteenth Amendment. *See Castro v.*

3    *County of Los Angeles*, 833 F.3d 1060, 1069–70 (9th Cir. 2016). To state a colorable

4    Fourteenth Amendment Due Process Clause claim, Plaintiff must allege that (1) the

5    defendant made an intentional decision with respect to the conditions under which the

6    plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering

7    serious harm; (3) the defendant did not take reasonable available measures to abate

8    that risk, even though a reasonable officer in the circumstances would have appreciated

9    the high degree of risk involved—making the consequences of the defendant's conduct

10   obvious; and (4) by not taking such measures, the defendant caused the plaintiff's

11   injuries. *Castro*, 833 F.3d at 1071.

12       Defendants argue that they are entitled to summary judgment on the failure to

13   protect claim because Kennedy has no evidence to support his claim and cannot meet

14   any of the elements required under *Castro*.  (ECF No. 84 at 18-24.)  In support of their

15   argument, Defendants provide portions of Kennedy's deposition testimony, in which

16   Kennedy testifies that he voluntarily entered the other inmate's cell after he was

17   "challenged."  (*See* ECF No. 84-1 at 49-54.)  Kennedy has not addressed these

18   arguments or offered any evidence to show that Defendants failed to protect him from

19   assault by another inmate. (*See* ECF No. 105.) Given that Defendants have asserted

20   the absence of a genuine issue of material fact as to whether their action or inaction

21   caused Kennedy's injury (ECF No. 84 at 18-24), and Kennedy has not responded to

22   Defendants' argument or produced any evidence to show that a genuine issue of

23   material fact exists, the court recommends that summary judgment be granted in favor

24   of Defendants. [7]

25   //

26

27   [7]    Because the court finds that Kennedy's rights were not violated, it need not
28   address Defendants' other arguments related to personal participation or qualified
     immunity.

9

1  **IV.    CONCLUSION**

2      Based upon the foregoing, the court recommends Defendants' motion for

3  summary judgment (ECF No. 84) be granted.  The parties are advised:

4      1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

5  Practice, the parties may file specific written objections to this Report and

6  Recommendation within fourteen days of receipt.  These objections should be entitled

7  "Objections to Magistrate Judge's Report and Recommendation" and should be

8  accompanied by points and authorities for consideration by the District Court.

9      2.    This Report and Recommendation is not an appealable order and any

10  notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the

11  District Court's judgment.

12  **V.    RECOMMENDATION**

13      **IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary

14  judgment (ECF No. 84) be **GRANTED**.

15  **DATED**:  January 23, 2020.

16

17  _____
    **UNITED STATES MAGISTRATE JUDGE**

18

19

20

21

22

23

24

25

26

27

28